UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION


Ronald F. Harsh, Sr., et al.,                                              Case No. 3:18-cv-2239

        Plaintiffs,

      v.                                                                          MEMORANDUM OPINION
                                                                                             AND ORDER

Kalida Manufacturing, Inc., et al.,

        Defendants.

## I.    INTRODUCTION AND BACKGROUND

Named Plaintiffs Ronald Harsh, Sr. and Julian Hinojosa claim their former employers, Defendants Kalida Manufacturing Inc., and KTH Parts Industries, Inc. violated a number of state and federal statutes and regulations governing overtime pay to employees. Both Named Plaintiffs worked for Defendants as forklift operators at Defendants' worksite in Kalida, Ohio—Harsh from February 2013 through April 2018, and Hinojosa from December 2017 through June 2018. Plaintiffs allege Defendants have a policy or practice of rounding down and reducing time entries, resulting in Defendants failing to pay Plaintiffs overtime wages. Named Plaintiffs allege this conduct violates the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"), and Ohio law.

Plaintiffs seek conditional certification of a collective class of similarly-situated putative plaintiffs, as well as authorization to issue a notice to potential members of the collective class. (Doc. No. 32). Defendants oppose conditional certification. (Doc. No. 42). Plaintiffs filed a reply brief in support of their pending motion. (Doc. No. 43). For the reasons stated below, Plaintiffs' motion is granted in part.

## II. ANALYSIS

Under the FLSA, a plaintiff may pursue a lawsuit known as a collective action on behalf of the plaintiff and "similarly situated" individuals to attempt to recover unpaid wages or overtime compensation. 28 U.S.C. § 216(b). Potential members of the plaintiff class must be "similar, not identical" to the named plaintiff, and also must opt-in to the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546-47 (6th Cir. 2006).

There are two stages to a court's certification of a collective action: (1) conditional certification, where the plaintiff must demonstrate there are similarly situated employees affected by the defendant's policy of conduct, and (2) decertification, where a defendant may seek to de-certify a class because the plaintiffs' claims are individualized rather than collective. *See, e.g., White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 877 (6th Cir. 2012). Absent proof to the contrary, an FLSA plaintiff may pursue a claim that the defendant's alleged FLSA violations were willful and thus subject to a three-year statute of limitations under 29 U.S.C. § 255. *Roebuck v. Hudson Valley Farms, Inc.*, 239 F. Supp. 2d 234, 240 (N.D.N.Y. 2002).

### A. CONDITIONAL CERTIFICATION

Initial certification of a collective action requires a named plaintiff to make a "modest factual showing," *Comer*, 454 F.3d at 546, that the plaintiff and other potential plaintiffs "'suffer from a single, FLSA-violating policy,' or whose 'claims [are] unified by common theories of defendants' statutory violations, even if the proof of these theories are inevitably individualized and distinct.'" *Monroe v. FTS USA, LLC*, 860 F.3d 389, 398 (6th Cir. 2017) (quoting *O'Brien v. Ed Donnelly Enter., Inc.*, 575 F.3d 567, 585 (6th Cir. 2009)). At this stage of conditional certification, the court "typically do[es] not consider the merits of the plaintiff's claims, resolve factual disputes, make credibility determinations, or decide substantive issues." *Swigart v. Fifth Third Bank*, 276 F.R.D. 210, 214 (S.D. Ohio 2011).

Plaintiffs seek to conditionally certify a class of plaintiffs consisting of "[a]ll current and former hourly, non-exempt employees of Defendants who, during any workweek within the three years preceding the filing of the instant Motion to the present, 'clock in' or 'clock out' to keep track of their compensable hours at Defendants' KMI worksite and worked at least forty (40) hours in any workweek." (Doc. No. 32 at 1).

Plaintiffs assert that, while employed as hourly, non-exempt workers at Defendants' worksite, they were denied overtime pay through Defendants' policy or practice of rounding down and reducing the time for which they were compensated. (Doc. No. 32 at 9; Doc. No. 32-2 at 4-6). They support this assertion with evidence that they, as well as all hourly, non-exempt workers working at this KMI worksite, are required to "clock in" and "clock out" before entering the factory floor. (Doc. No. 32-1 at 6; Doc. No. 32-2 at 4-5). Plaintiffs have provided payroll and timekeeping records to show how the alleged policy affects them. Plaintiffs, through sworn testimony, also allege they have personal knowledge that this policy applies to hourly, non-exempt employees regardless of their scheduled shifts, department, or job classification. (Doc. No. 32-1 at 6-7; Doc. No. 32-2 at 6-8).

Defendants do not dispute that many, if not all, hourly, non-exempt employees at the worksite are required to "clock in" and "clock out." Nor do Defendants dispute that the time clock entries play some role in the payroll process for many hourly, non-exempt employees. ("Every day, KMI generates what is referred to as an Exception Report from the time clock data.") (Doc. No. 42 at 18).

Defendants argue, among other things: (1) there is no rounding policy in place; (2) that while employees can clock in up to fifteen minutes early, they are not allowed to work during that time; and (3) there is a reasonable policy and procedure in place for employees to report uncompensated

work time. But each of these arguments is misplaced because they relate to the merits of the Plaintiffs' claims, not to the question of whether other employees are similarly situated.

Defendants also claim that "speculation" by Plaintiffs is not a permissible basis for conditional certification. (Doc. No. 42 at 36). To the extent that Defendants mean that Plaintiffs have not proven that they were in fact working during the relevant times, this is another argument on the merits that I will not resolve at this time. If the Defendants mean that the Plaintiffs have offered only speculation that other similarly situated plaintiffs exist, then that argument is relevant, but it is wrong. Unlike the cases Defendants rely on, here the Plaintiffs have offered more than speculation about the existence of other potential plaintiffs.

In *Rutledge*, cited by Defendants, the court was faced with affidavits that did not address whether other employees were similarly-situated. *Rutledge v. Claypool Elec., Inc.*, No. 2:12-cv-159, 2012 WL 6593936 (S.D. Ohio Dec. 17, 2012), *report and recommendation adopted by* 2013 WL 435058 (S.D. Ohio Feb. 5, 2013). In *Combs*, also relied on by Defendants, the court explained that declaration at issue "does not contain facts showing that he has actual or even constructive knowledge that [other employees] . . . worked overtime hours for which they were not paid." *Combs v. Twins Grp., Inc.*, No. 3:16-cv-295, 2016 WL 7230854 (S.D. Ohio Dec. 14, 2016).

Here, the Plaintiffs have made allegations based on their personal knowledge that a specific group of employees ("other hourly, non-exempt employees" at the worksite) are all subjected to this same practice. (Doc. No. 43 at 12). That, together with the payroll and timekeeping records provided thus far, is enough to satisfy the "modest factual showing" that Plaintiffs must make at this stage. *Comer*, 454 F.3d at 546.

Finally, Defendants rely on statements of twenty-three current employees to show the potential plaintiffs are not interested in litigation because they are being paid lawfully under the Defendants fixed-schedule payroll system. (Doc. No. 42 at 19-28). Courts in this circuit have

4

consistently rejected the notion that these "happy camper" affidavits are enough to defeat conditional certification. *See, e.g., Creely v. HCR ManorCare, Inc.*, 789 F.Supp.2d 819, 840 (N.D. Ohio 2011) ("Just as courts have not traditionally required a plaintiff seeking conditional certification to come forward with some threshold quantity of opt-in plaintiffs . . . it is no more helpful for the employer to round up a small sample of favorable statements from employees."); *Abner v. Converygys Corp.*, No. 1:18-cv-442, 2019 WL 1573201 at *5 (S.D. Ohio Apr. 11, 2019); *Myers v. Marietta Memorial Hospital*, 201 F. Supp. 3d 884, 891 (S.D. Ohio 2016). I see no reason to deviate from this approach in a case where twenty-three out of over three hundred employees at a worksite are happy with the current practice.

Therefore, I conclude Plaintiffs have provided "a colorable basis for [their] claim that a class of similarly situated plaintiffs exists." *Creely,* 789 F.Supp.2d at 823. I approve Plaintiffs' class definition and grant their motion for conditional certification.

**B. NOTICE**

The FLSA does not dictate any particular method or form of notice to potential plaintiffs in collective action litigation. Courts may exercise discretion in authorizing the notice which informs potentially similarly-situated employees of their right to opt-in to the litigation. *Comer*, 454 F.3d at 546. Defendants raise a number of objections to the Plaintiffs' Proposed Notice. (Doc. Nos. 32-3 & 42-27). In light of my discussion of the parties' substantive disputes above, I conclude the most efficient path forward is for the parties to meet and develop a mutually acceptable form of notice. I will briefly address three issues to guide the parties' discussions going forward.

First, the Defendants object to notice via email. I find sending notice by both U.S. mail and email appropriate. Notice by electronic mail is both inexpensive and non-invasive, and it better serves the remedial purpose of the FLSA than notice by mail alone. Further, allowing both forms initially is more efficient than waiting until certain mailings are returned as undeliverable.

5

Second, the Defendants also object to the Plaintiffs' request for a reminder notice sent half-way through the notice period. Because I find notice by email and U.S. mail is sufficient to offset the risk that mailing addresses have become stale, I do not find a reminder notice to all potential plaintiffs necessary at this time. *See McCullen v. Toledo Country Club*, No. 18-cv-276, 2019 WL 90809, at *2 (N.D. Ohio Jan. 3, 3019).

Finally, I order Defendants to, within fourteen days of this order, provide Plaintiffs with a list in an electronically importable and non-proprietary format of the names, positions of employment, last-known mailing addresses, email addresses, and dates of employment of all potential opt-in plaintiffs who worked for Defendants at the KMI worksite any time from three years preceding the filing of the January 22, 2019 motion.

Defendants claim they do not "collect or maintain records" of these individuals' email addresses. (Doc. No. 42 at 39). But as Plaintiffs point out, Defendants' website requires applicants to provide an email address, and Defendants themselves state that email is sometimes used to communicate with employees. (Doc. No. 43 at 22; Doc. No. 42 at 19). Defendants shall provide the email addresses they have for potential opt-in plaintiffs.

If the parties are unable to resolve all of their disagreements as to the content and form of the notice, they shall provide alternate versions of the appropriate sections along with supporting case law.

### III. CONCLUSION

For the reasons stated above, Plaintiffs' motion as to conditional certification is granted. (Doc. No. 32). The parties shall submit a revised proposed notice to me for review within 14 days of the date of this opinion, or should they not be able to agree, alternate forms of the notice from each party with support for their position.

So Ordered.

s/ Jeffrey J. Helmick
United States District Judge